**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **CARDINAL HEALTH 414, LLC** | : | |
| | : | |
| *Plaintiff* | : | |
| | : | |
| v. | : | Case No. 2:19-cv-4121 |
| | : | |
| **TIM PRATOR** | : | |
| | : | |
| *Defendant* | : | |

## **COMPLAINT**

Plaintiff Cardinal Health 414, LLC ("Cardinal Health" or the "Company") states as follows for its Complaint against Defendant Tim Prator ("Prator" or "Defendant"):

## **PARTIES**

1.    Cardinal Health was established under Delaware law and is headquartered in Dublin, Ohio.  Cardinal Health, including its related entities, is a global, integrated, healthcare services and products company, providing customized services and products for physician offices, clinical laboratories, medical clinics, hospital systems, pharmacies, ambulatory surgery centers, and manufacturers throughout the United States and worldwide. Cardinal Health also maintains robust distribution capabilities.  Cardinal Health's areas of expertise include providing hospitals, physician offices, medical clinics, pharmacies, third-party payers, and pharmaceutical and medical device manufacturers with business solutions, patient solutions, treatment information, logistics, specialized drug and other health care products and services, and product manufacture and distribution services.  This includes nuclear pharmacy and precision health products and services.

2.    Cardinal Health's sole member is Cardinal Health 100, Inc., which is incorporated in Indiana and has its principal place of business in Ohio.

3.     Prator is a resident of Georgia, currently residing at 3006 Haseley Court, Grovetown, Georgia 30813, and is a former employee of Cardinal Health.

## JURISDICTION AND VENUE

4.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs.

5.     Personal jurisdiction and venue are proper in this Court pursuant to the controlling contract entered into between Cardinal Health and Prator, which is attached as Exhibit 1.  *See* Prator Agreement for NPS Pharmacy Managers, Supervisors, or Staff Pharmacists (the "Agreement") at ¶4.1.  Per the Agreement, Prator expressly agreed that "[a]ll disputes arising under the Agreement shall be brought exclusively in the federal or state courts of Franklin County, Ohio" and "consent[ed] to the jurisdiction of those courts." *Id*.

## FACTS

6.     One of Cardinal Health's primary business segments involves the marketing and sale of radiopharmaceuticals to various customers throughout the United States and globally. These customers include both hospitals and clinics located all over the United States, including in Georgia.  Cardinal Health invests significant resources and time into developing its customers and training its sales staff.

7.     Prator was employed at Cardinal Health between February 2003 and October 2018. The last position Prator held at Cardinal Health was a Manager, Nuclear Pharmacy, in Cardinal Health's Nuclear Pharmacy and Precision Health Solutions Division.  Prator worked out of Cardinal Health's nuclear pharmacy in Augusta, Georgia.

8.      In his role as Manager, Nuclear Pharmacy, Prator was responsible for overseeing Cardinal Health's radiopharmaceutical sales in Georgia and had access to, and direct contact with, Cardinal Health's customers and employees in Georgia.  Approximately 25 Cardinal Health pharmacy staff members worked under Prator.

9.      Cardinal Health provided Prator with training, technology, confidential business information, and other resources needed to develop knowledge about Cardinal Health's nuclear and radiopharmaceutical products, prices, and sales relationships with Cardinal Health's customers.  This confidential information included information about Cardinal Health's business plans, services, customer contact information and preferences, sales data, revenue and profit data, changes in pricing, and business and marketing strategies.

10.     During his employment with Cardinal Health, Prator also had access to Cardinal Health's internal confidential information concerning Cardinal Health's nuclear pharmacy business and products in Georgia.  This included pricing and discount information of Cardinal Health's radiopharmaceuticals and the strengths and potential weaknesses of Cardinal Health's products and services.

## PRATOR'S AGREEMENT

11.     On January 5, 2006, Prator signed the Agreement with Cardinal Health.  Prator's acceptance of the Agreement was in consideration for, and a condition of, Prator's eligibility to participate in Cardinal Health's Pharmacy Incentive Compensation Plan.

12.     In the Agreement, Prator agreed, among other things, to a non-solicitation provision, which states:

> While employed by the Company and for 12 months afterwards, I shall not, without the Company's prior written consent, directly or indirectly (i) solicit, recruit, induce or otherwise encourage Company employees to end their employment or engage in any

> Competitive Business; and/or (ii) solicit for any Competitive Business any existing Company customer, vendor or supplier with which I had material contact on behalf of the Company in the two years preceding the end of my employment with the Company.

Ex. 1 at ¶1.3.

13.　　The Agreement defines a "Competitive Business" as "a pharmacy or other facility that competes with the Company's nuclear pharmacy products and services by selling, distributing, compounding or dispensing nuclear pharmaceutical products and services in retail or wholesale markets."  Ex. 1 at ¶1.1.  "Competitive Business includes, but is not limited to, a commercial nuclear pharmacy, a nuclear pharmacy owned or operated by, or on behalf of, a hospital, clinic, medical practice or any other healthcare provider, and a cyclotron facility that dispenses FDG or other radioisotopes for medical use." *Id*.

14.　　Prator also agreed to a provision restricting his use of the Company's Confidential Information, which states:

> While employed by the Company and for 24 months afterwards, I will <u>not</u> use or disclose, sell, assign, transfer, share or lease the Company's Confidential Information to any person or entity unless reasonably necessary to perform my authorized duties to the Company.

Ex. 1 at ¶1.4.

15.　　The Agreement defines "Confidential Information" as "information about the Company's present or planned business which has not been released publicly." Ex. 1 at ¶1.4.  Such information "may include trade secrets, inventions, financials, customer information, strategies and other documents or data in any form, whether written, oral or electronic, regardless of the storage method." *Id*.  Confidential Information also includes "information the Company receives in confidence from customers, vendors, suppliers or other outside entities."  *Id*.

16.     By signing the Agreement, Prator acknowledged and agreed that any violation of the Agreement's non-solicitation or confidentiality provisions "would cause the Company irreparable harm" and that "the Company is entitled to injunctive relief against [him] in addition to its other rights and remedies."  Ex. 1 at ¶2.4.

## PRATOR'S POST-EMPLOYMENT ACTIVITIES AND
## UNFAIR BUSINESS PRACTICES

17.     Prator resigned from Cardinal Health in October 2018.

18.     On December 28, 2018, Prator formed Augusta Isotope, LLC ("Augusta Isotope") by filing Articles of Organization with the Georgia Secretary of State.

19.     Prator formed Augusta Isotope as a new nuclear pharmacy to compete directly with Cardinal Health's Nuclear Pharmacy and Precision Health Solutions Division.

20.     Since forming Augusta Isotope, Prator has met with and discussed his new business with Cardinal Health's customers throughout the Augusta, Georgia area, including customers with whom Prator worked while he was employed by Cardinal Health.

21.     Upon information and belief, Prator has asked those customers whether they would be willing to invest in Augusta Isotope.  He has also communicated with Cardinal Health customers about moving their business from Cardinal Health to Augusta Isotope.

22.     Upon information and belief, Prator has showed Cardinal Health's customers the plans for his new pharmacy.  Prator has discussed Cardinal Health's pricing information with customers, prospective customers, and others outside of Cardinal Health.  He has also told Cardinal Health's customers that Cardinal Health could not beat his or Augusta Isotope's prices.

23.     On August 29, 2019, several Cardinal Health customers informed Cardinal Health representatives that they had met with Prator, that they knew of new competition coming to the market, and that they had been told Prator's prices would be better than those of Cardinal Health.

24.     At least one customer with whom Prator is believed to have communicated has provided Cardinal Health with a written notice to cancel its contract with Cardinal Health for nuclear pharmacy products and services.

25.     Upon information and belief, Prator has also solicited and/or recruited employees with whom he worked at Cardinal Health to join him at Augusta Isotope.

26.     On August 13, 2019, Cardinal Health's legal counsel sent Prator a letter to address his improper solicitation of nuclear pharmacy business from Cardinal Health's customers and other conduct in violation of the Agreement.  A true and accurate copy of the letter is attached as Exhibit 2.

27.     Neither Prator nor any counsel or other person acting on his behalf ever responded to the letter from Cardinal Health's counsel.  Instead, Prator has continued to move forward with his competing business and violations of the Agreement.

## COUNT I – BREACH OF CONTRACT

28.     Cardinal Health incorporates the foregoing Paragraphs as though fully set forth herein.

29.     In connection with his employment at Cardinal Health, Prator accepted the Agreement by signing it on January 5, 2006.

30.     The Agreement was supported by adequate consideration, including Prator's eligibility for Cardinal Health's Pharmacy Incentive Compensation Plan.

31.     The Agreement is valid and enforceable and contains reasonable post-employment restrictions.

32.     Cardinal Health performed and fulfilled its obligations under the Agreement.

33. By and through his actions as set forth above, including his business communications with and solicitation of Cardinal Health's customers and employees, and his use of Cardinal Health's Confidential Information, Prator has breached and is continuing to breach his obligations under the Agreement.

34. As a direct and proximate result of Prator's breaches of the Agreement, Cardinal Health has suffered and will continue to suffer substantial harm and damages.

35. As Prator's breaches are ongoing and will cause Cardinal Health irreparable harm, Cardinal Health has no adequate remedy at law.

36. Cardinal Health is entitled to damages as a result of Prator's breaches including, but not limited to, Cardinal Health's costs and attorneys' fees incurred in bringing this action. Under the Agreement, Prator agreed that a breach of the restrictions in the Agreement would cause Cardinal Health "irreparable harm" entitling Cardinal Health to "injunctive relief against [him]." Prator also agreed that Cardinal Health "will be entitled to collect from [him] its monetary damages, costs and reasonable attorneys' fees" incurred in enforcing the Agreement. *See* Ex. 1, ¶2.4.

## COUNT II – MISAPPROPRIATION OF TRADE SECRETS

37. Cardinal Health incorporates the foregoing Paragraphs as though fully set forth herein.

38. Cardinal Health has maintained and developed trade secrets and other Confidential Information, and has taken reasonable steps under the circumstances to safeguard the confidentiality and secrecy of its trade secrets and Confidential Information, all of which are extremely valuable and critical to the operation of its business and must be protected from direct or indirect disclosure and unauthorized use.

39. That information has independent economic value from not being generally known to, and not being readily ascertainable by proper means by, Cardinal Health's competitors who can obtain economic value from its use. Through his business, which is patterned after and competes directly with Cardinal Health, Prator will profit unfairly and unlawfully from the actual and/or inevitable disclosure or use of, and/or reliance upon, Cardinal Health's trade secrets and other Confidential Information.

40. Prator's conduct, including by, through and/or on behalf of Augusta Isotope, constitutes the actual or threatened misappropriation, misuse, and/or inevitable reliance upon Cardinal Health's confidential, proprietary and trade secret information in violation of Ohio Rev. Code §§ 1333.61 to 1333.69.

41. The Ohio Trade Secrets Act (the "Act") provides that actual or threatened misappropriation of trade secrets may be enjoined. Ohio Rev. Code § 1333.62(a).

42. Cardinal Health has taken reasonable steps to safeguard its Confidential Information and trade secrets.

43. Unless Prator is enjoined from disclosing and/or utilizing Cardinal Health's Confidential Information and trade secrets, Cardinal Health will continue to be immediately and irreparably harmed because its competitor will receive and have the use of Confidential Information (developed through Cardinal Health's resources) that Prator and Augusta Isotope can use to their economic advantage and to Cardinal Health's detriment in competing with Cardinal Health.

44. As a result of Prator's misappropriation and/or threatened misappropriation of Cardinal Health's trade secrets, Cardinal Health has suffered and will suffer immediate and

irreparable harm, as well as substantial harm and damages in an amount to be proven at trial. Cardinal Health has no adequate remedy at law.

<u>**COUNT III – INJUNCTIVE RELIEF**</u>

45.    Cardinal Health incorporates the foregoing Paragraphs as though fully set forth herein.

46.    Unless Prator is enjoined from the aforementioned conduct, Cardinal Health will be irreparably harmed by Prator's ongoing breaches of the Agreement and by his misappropriation of its Confidential Information and trade secrets, which has caused and will continue to cause Cardinal Health the loss of goodwill, loss of reputation, loss of customers and business, and present and future economic loss.

47.    Cardinal Health has already suffered and will continue to suffer irreparable injury and harm to its business, and monetary damages are an inadequate redress for such continuing injury.

48.    Cardinal Health has no adequate remedy at law and is entitled to injunctive relief.

WHEREFORE, Cardinal Health demands judgment as follows:

A.    Preliminary and permanent injunctive relief that:

i.    Enjoins Prator, for 12 months following the date of his last breach of the Agreement, from directly or indirectly (including through others at Augusta Isotope) soliciting for any Competitive Business any existing Cardinal Health customer, vendor or supplier with which Prator had material contact on behalf of Cardinal Health in the two years preceding the end of his employment with Cardinal Health;

      ii.    Enjoins Prator, for 12 months following the date of his last breach of the Agreement, from directly or indirectly (including through others at Augusta Isotope) soliciting, recruiting, inducing or otherwise encouraging Cardinal Health employees to end their employment or engage in any Competitive Business;

      iii.   Enjoins Prator, for 24 months following the date of his last breach of the Agreement, from directly or indirectly (including through others at Augusta Isotope) using or disclosing Cardinal Health's Confidential Information or trade secrets to any person or entity;

      iv.   Enjoins Prator from otherwise violating the terms of the Agreement; and,

      v.    Requires Prator to immediately return to counsel for Cardinal Health all originals, copies or other reproductions, in any form whatsoever, of any of Cardinal Health's Confidential Information, trade secret information, and other property;

B.    Compensatory damages against Defendant in an amount exceeding $75,000.00;

C.    Punitive and exemplary damages pursuant to Ohio Rev. Code § 1333.63(B);

D.    Specific performance of the Agreement;

E.    An award of Cardinal Health's costs incurred in the prosecution of this action, including reasonable attorneys' fees; and,

F.    Such other and further relief, legal and equitable, that this Court deems just and proper.

Respectfully submitted,


*/s/ Kevin E. Griffith*
Kevin E. Griffith, *Trial Attorney*  (#0037297)
Chad J. Kaldor  (#0079957)
LITTLER MENDELSON, P.C.
21 East State Street, 16th Floor
Columbus, OH  43215
Telephone:  614.463.4210
Facsimile:  614.737.9135
E-mail:      kgriffith@littler.com
             ckaldor@littler.com

*Attorneys for Plaintiff*

4828-5847-6707.2 080589.1009