IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CARDINAL HEALTH 414, LLC,**

    **Plaintiff,**

vs.

    Case No. 2:19-cv-4121
    Magistrate Judge Elizabeth P. Deavers

**TIM PRATOR,**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of the Motion to Quash and/or Limit Subpoena, which was originally filed in the United States District Court for the Southern District of Georgia by Non-Party Augusta Isotopes Holdings, LLC ("Augusta Isotopes" or "AI"). (ECF No. 36.) On August 13, 2021, Plaintiff filed a Memorandum in Opposition (ECF No. 37), and Augusta Isotopes did not file a Reply. On November 9, 2021, the Southern District of Georgia transferred the Motion to this Court. (ECF No. 38.) The matter is thus ripe for review by this Court. For the reasons that follow, the Motion to Quash is **DENIED**.

**I.**

This case arises out of Defendant Tim Prator's employment agreement with Plaintiff Cardinal Health 414, LLC ("Cardinal Health"). (*See generally* Complaint, ECF No. 1.) On September 17, 2019, Cardinal Health filed a Complaint alleging breach of contract and misappropriation of trade secrets against Defendant Prator, seeking injunctive and compensatory relief. (*Id.*) At the core of the Complaint is the allegation that Defendant Prator violated non-compete, non-solicitation, and confidentiality provisions in his employment agreement with Cardinal Health when he left Cardinal Health to help found Augusta Isotopes, a competitor to

Cardinal Health.  (*Id.*)

On July 20, 2021, Cardinal Health served a subpoena and Notice of Rule 30(b)(6) Deposition on Augusta Isotopes.  (ECF No. 39-1.)  Therein, Cardinal Health sought testimony regarding the following six deposition subjects:

1. The circumstances that led to AI's formation on December 28, 2018, including (a) the identity of the person(s) involved in any communications—and the substance of those communications—about the formation of and business plan for AI, including AI's prospective members, employees, investors, business partners, or others; and (b) Tim Prator's role in—and any contributions he made to—the formation of AI and/or its business plans, including any information, work, service, contribution, or other benefit provided by Tim Prator to help form or establish AI.

2. The extent and nature of the relationship between AI and Defendant Prator between September 1, 2018 and the present, including (a) the actual or approximate dates of any ownership, employment, independent contractor or consultancy relationship, or any other relationship between AI and Defendant Prator, (b) the nature and scope of Defendant Prator's hours and duties in any ownership, employment, independent contractor, consultancy, or other relationship between Defendant Prator and AI, (c) the information, work, service, contribution, or other benefit Defendant Prator provided to or on behalf of AI, (d) the nature, amount, and reason for any payment, compensation, or other benefit AI provided or afforded to Defendant Prator.

3. AI's efforts to solicit or otherwise obtain business from the Cardinal Health customers or prospective customers with whom Defendant Prator had been doing business and/or for whom he was responsible during his employment with Cardinal Health (such as Augusta University Medical Center; Augusta University Pet, Center for Primary Care, Pennteck Diagnostics of Augusta/Heart and Vascular Associates; University Hospital of Augusta; University Nuclear Cardiology; VA Medical Center of Augusta; West Side Cardiology; Medical College of Georgia; and Charlie Norwood VA), including Defendant Prator's role in such solicitations or other efforts to obtain business from, or establish or develop a relationship with, these Cardinal Health's customers or prospective customers.

4. Communications with or by any actual or potential AI member, employee, customer, investor, agent or other representative of AI regarding Cardinal Health's products; services; pricing; employees; customers; business plans; business practices; contracts; and business information, whether confidential, trade secret or otherwise.

5. Communications between or by any AI owners, managers, employees, independent contractors, consultants, and/or members and Defendant Prator

>regarding (a) any Employment Agreement or other contractual or post-employment obligations he had with Cardinal Health, or (b) anything related to this lawsuit, which Cardinal Health filed against Defendant Prator on September 17, 2019 in the federal District Court for the Southern District of Ohio.
>
>6. Agreements and financial records, including profit and loss statements and balance sheets, related to the sale of drugs, products, goods, or services provided by AI to any Cardinal Health customer or prospective customer with whom Defendant Prator had been doing business and/or for whom he was responsible during his employment with Cardinal Health—such as the customers listed in No. 3 above—including information about the (i) drug, product, good, or service sold or provided to any such customers, (ii) the price of such drug, product, or service sold or provided to any such customers, (iii) the profit margin for the product, good, or service sold or provided to any such customer; and (iv) the terms of any agreement with any such customers.

(*Id.* at PAGEID ## 126-128.) Cardinal Health also submitted the following three requests for production:

>1. Documents or ESI containing meeting minutes or other information concerning AI board meetings, AI board committee meetings, and AI member meetings or communications, between the time of AI's formation until the present, that discuss or concern Prator or customers of AI known to have done business with Cardinal Health in the past, including any related documents presented, sent, or otherwise provided in connection with such meetings or communications.
>
>2. AI's policies, procedures, and/or agreements regarding the protection of its business information and/or allegedly trade secret or confidential information.
>
>3. To the extent not included in Request No. 2, AI's employment policies and procedures.

(*Id.* at PAGEID # 132.) On July 30, 2021, Augusta Isotopes[1] filed the subject Motion to Quash, generally arguing that the subpoena requires disclosure of privileged or other protected matter

---

[1] The Court notes that while the subject subpoena was directed to Augusta Isotopes, LLC, the entity which filed the subject Motion to Quash is Augusta Isotopes Holdings, LLC. (*Compare* ECF No. 36 *with* ECF No. 39.) As Cardinal Health observes, however, Augusta Isotopes, LLC and Augusta Isotopes Holdings, LLC have the same registered agent and organizer, per the Georgia Secretary of State's website. (ECF No. 37 at PAGEID # 106, n.3.) Although Augusta Isotopes Holdings, LLC has made no showing of standing, Cardinal Health appears content to assume that Augusta Isotopes Holdings, LLC's rights and interests are substantially the same as Augusta Isotopes, LLC. (*Id.*) The Court will assume the same.

and subjects Augusta Isotopes to undue burden. (ECF No. 36.) In response, Cardinal Health argues that Augusta Isotopes "fails to provide a single legal basis for the Court to quash or limit the subpoena" and "the documents and proposed topics of examination sought are highly relevant to Cardinal Health's . . . claims against Prator." (ECF No. 37 at PAGEID # 107.) Cardinal Health further argues that Augusta Isotopes "can comply with the subpoena while protecting its allegedly proprietary information under the Protective Order" that has been issued in this case. (*Id.* at PAGEID # 108.)

## II.

Rule 45 of the Federal Rules of Civil Procedure governs third-party subpoenas. Under Rule 45, parties may command a nonparty to, *inter alia,* produce documents. Fed. R. Civ. P. 45(a)(1). Rule 45 further provides, however, that "the issuing court must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). Courts "have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics,* 275 F.R.D. 251, 253 (S.D. Ohio 2011) (citation omitted).

## III.

Augusta Isotopes seeks to quash the subject subpoena for two reasons. First, Augusta Isotopes argues that "Cardinal [Health] has not shown that the information sought is relevant to its claims against Tim Prator and that the information cannot be obtained through discovery from Tim Prator, a party to their litigation." (ECF No. 36 at PAGEID # 100.) Second, Augusta Isotopes argues that it "should not be compelled to disclos[e] its highly confidential, proprietary trade secrets without limitations in scope and other adequate protections that protect its confidential business records and information." (*Id.*) The Court finds these arguments

4

unavailing.

First, the Court concludes that the subject subpoena seeks information that on its face is highly relevant to Cardinal Health's claims in this case.  The six deposition topics and three requests for production all relate directly to Defendant Prator's role in forming and working on behalf of Augusta Isotopes, which is the very basis of Cardinal Health's claims.  As the party seeking to quash the subpoena, Augusta Isotopes had the burden of proof to establish the lack of relevance and failed to do so.  *See Hendricks*, 275 F.R.D. at 253 ("If the discovery sought appears relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance but when relevancy is not apparent on the face of the request, the party seeking the discovery has the burden to show the relevancy of the request.") (internal quotation marks and citation omitted).

Further, while it is true that Federal Rule of Civil Procedure 26(b)(2)(C)(i) calls for the limitation of discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," the Court rejects Augusta Isotopes' suggestion that Cardinal Health should simply request the documents and information from Defendant Prator.  Fed. R. Civ. P. 26(b)(2)(C)(i).  First, the Court is well aware of Defendant Prator's noncompliance with Cardinal Health's discovery requests in this litigation to date, and the Court highlights Cardinal Health's assertion that Defendant Prator "has claimed he does not have a single responsive document and that **[Augusta Isotopes] has directed him not to produce relevant discovery information about [Augusta Isotopes]**."  (ECF No. 37 at PAGEID # 105 (emphasis added).)  Augusta Isotopes does not deny the truth of this statement, and affirmatively states that "Tim Prator has informed Cardinal **he lacks the resources to engage in discovery or defend against Cardinal's claims**."

5

(ECF No. 36 at PAGEID # 101 (emphasis added).) Based on these undisputed assertions, the Court cannot conclude that it would be "more convenient, less burdensome, or less expensive" for Cardinal Health to seek discovery from a party who (a) has been directed not to produce relevant documents and information, and (b) lacks the resources to engage in discovery to begin with.

As to Augusta Isotopes' argument that it "should not be compelled to disclos[e] its highly confidential, proprietary trade secrets without limitations in scope and other adequate protections that protect its confidential business records and information," the Court is satisfied that the Stipulated Protective Order entered in this case, ECF No. 10, will protect Augusta Isotopes' allegedly confidential or proprietary material. While the Court is mindful of Augusta Isotopes' concern that Cardinal Health is engaging in a fishing expedition to obtain a business advantage, Augusta Isotopes is free to designate any information as "CONFIDENTIAL-ATTORNEYS' EYES ONLY" to eliminate the risk of Cardinal Health obtaining any business advantage. Pursuant to Paragraphs 2(c) through 2(g) of the Stipulated Protective Order, any information with such designation will only be provided to counsel, experts specifically retained in and for this litigation, court personnel and stenographers, authors and addresses, and other persons as agreed upon by the parties or by order of the Court. (ECF No. 10 at PAGEID ## 48-49.)[2] For this reason, the Court finds that Cardinal Health's interest in obtaining the discovery outweighs any privacy concerns Augusta Isotopes may have, and concludes that Augusta Isotopes must comply with the subject subpoena.

---

[2] Of course, pursuant to Paragraph 9 of the Stipulated Protective Order, a party may challenge the propriety of any designation. (ECF No. 10 at PAGEID # 51.)

**IV.**

Accordingly, the Motion to Quash and/or Limit Subpoena, ECF No. 36, is **DENIED**. Augusta Isotopes, LLC is **DIRECTED** to meet and confer with the parties to schedule a deposition pursuant to the subject subpoena, ECF No. 39-1, within **THIRTY (30) DAYS** of the date of this Opinion and Order. The parties are **DIRECTED** to file a Notice with the Court once the deposition is complete and propose deadlines for completion of discovery and filing of dispositive motions.

**IT IS SO ORDERED.**

Date: December 8, 2021                    /s/ *Elizabeth A. Preston Deavers*
                                          ELIZABETH A. PRESTON DEAVERS
                                          UNITED STATES MAGISTRATE JUDGE